1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    RAFAEL ARROYO,
                                                Case No.  21-cv-00215-JCS
                   Plaintiff,
8
          v.
                                                **ORDER GRANTING MOTION TO**
9                                               **DISMISS FIRST AMENDED**
     ASHFORD NEWARK LP,                         **COMPLAINT**
10
                   Defendant.                   Re: Dkt. No. 15
11

12

13

14   **I.      INTRODUCTION**

15           Plaintiff Rafael Arroyo brings this action against Defendant Ashford Newark LP, which

16   operates a hotel in Newark, California.  Arroyo alleges that Defendant's reservation website does

17   not reasonably identify and describe accessible features of the hotel, in violation of federal and

18   California law.  Arroyo alleges that this failure prevents individuals with disabilities from

19   assessing whether the hotel meets their accessibility needs.  Defendant brings a Motion to Dismiss

20   First Amended Complaint ("Motion") for failure to state a claim under Rule 12(b)(6) of the

21   Federal Rules of Civil Procedure.  The Court finds the Motion is suitable for determination

22   without oral argument and therefore vacates the Motion hearing set for July 16, 2021. The Court

23   also vacates the initial case management conference set for the same date.  For the reasons

24   discussed below, Defendant's motion to dismiss is GRANTED.[1]

25   **II.     BACKGROUND**

26           Because a plaintiff's factual allegations are generally taken as true in resolving a motion to

27   _____

28   [1] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to
     28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    dismiss under Rule 12(b)(6), this order summarizes Arroyo's allegations as if true.  Nothing in this

2    order should be construed as resolving any issue of fact that might have been disputed at a later

3    stage of the case if it had proceeded beyond the present motion.

4        **A.    Allegations of the Complaint and Facts Subject to Judicial Notice**

5        Arroyo is a paraplegic.  Amended Complaint ("FAC," dkt. 13) ¶ 1.  He is "substantially

6    limited in his ability to walk" and "uses a wheelchair for mobility."  *Id.*  Arroyo's disability

7    creates challenges for him to "stand, move, reach objects mounted at heights above his shoulders,

8    transfer from his chair to other equipment, and maneuver around fixed objects."  *Id.* ¶ 12.  Because

9    of these challenges, Arroyo requires an accessible guestroom when he travels.  *Id.* ¶ 13.  Arroyo

10   also requires information about the "accessible features in hotel rooms" at the time of booking so

11   that "he can confidently book those rooms and travel independently and safely."  *Id.*

12       Arroyo accessed the Defendant's website to make a reservation for a trip he planned to

13   make to San Jose in April 2021.  *Id.* ¶¶ 14, 16.  Defendant owns and operates the Courtyard by

14   Marriot Newark Silicon Valley.  *Id.* ¶ 2.  The website is the "official online reservation system for

15   this hotel."  *Id.* ¶¶ 17–18.

16       Arroyo alleges the website has "insufficient date or details about the accessible

17   guestrooms."  *Id.* ¶ 19.  He states that the website has a "general accessibility tab" which lists

18   "Accessible Hotel Features" but includes "very little in the way of actual information and detail"

19   beyond a label of "accessible."  *Id.* ¶¶ 20–23.  Arroyo presents screenshots of the website's list of

20   "Accessible Areas with Accessible Routes from Public Entrance," which include spaces such as

21   the "Business Center," the "Registration desk," and "Restaurants(s)/Lounge(s)."  *Id.* ¶ 25.  Arroyo

22   alleges that this list is too generic and amounts to the hotel "slap[ping] the naked label

23   'accessible'" on all of its public spaces.  *Id.* ¶ 26.  Arroyo contends that claiming an amenity or

24   space is "accessible" is merely "a conclusion or opinion" and is not a statement that persons with

25   disabilities can use to make judgments about whether a room is suitable for their needs.  *Id.* ¶ 23.

26       Arroyo concedes that the website's accessibility features list contains "pieces of

27   information" that comply with the Americans with Disabilities Act ("ADA") and are specific

28   enough for Arroyo to use in his determinations.  *Id.* ¶ 32.  For example, the website lists "32-inch-

1  wide doorways" and "the existence of grab bars and a bathtub seat." *Id.* ¶ 32. Overall, though,

2  Arroyo alleges that the accessibility information listed on the website does not allow him to

3  "engage in an online booking of the hotel room with any confidence or knowledge about whether

4  the room will actually work for him due to his disability." *Id.* ¶ 40.

5      Arroyo alleges that key pieces of information are missing. *See id.* ¶¶ 35–37. For example,

6  Arroyo states that he could not determine if the shower had an "in-shower seat" or "grab bars

7  mounted on the walls." *Id.* ¶ 37. Arroyo also details information he needs about door, bed, and

8  restroom measurements that he states are currently unavailable on the website. *See id.* Although

9  Arroyo states that he "does not need an exhaustive list of accessibility features," he asserts that the

10  website needs the "handful of areas to be described in enough detail to permit him to

11  independently assess that the room works for him." *Id.* ¶ 36.

12      Arroyo alleges that the missing information barred him from booking a guestroom. *See id.*

13  ¶ 35. Arroyo travels to San Jose and Santa Clara regularly, in part for his work as an ADA tester,

14  and plans to use this reservation website in the future. *See id.* ¶¶ 41–45.

15      Arroyo asserts two causes of action against Defendant: (1) Violation of the ADA (42

16  U.S.C. § 12101 *et seq.*); and (2) Violation of the Unruh Civil Rights Act (Cal Civ. Code §§ 51–

17  53). *See id.* ¶¶ 47–54. Arroyo seeks injunctive relief and attorneys' fees under the ADA and the

18  Unruh Act, as well as damages under the Unruh Act. *See id.* at 16 (prayer for relief).

19      Defendant requests judicial notice of screenshots of its reservations website describing

20  certain accessibility features available, a list of other cases Arroyo has brought asserting disability

21  access violations, a consent decree in a case brought by the United States against Hilton

22  Worldwide, Inc., and dismissal orders and other court filings in similar ADA cases. *See* Request

23  for Judicial Notice ("RJN," dkt. 15-2). The screenshot from Defendant's website (RJN, Ex. 2) is

24  subject to judicial notice under the doctrine of incorporation by reference.[2] *See Khoja v. Orexigen*

25

26  _____

27  [2] Defendants claim one of the exhibits is the "Accessibility Tab" from their own website, but the
exhibit provided is actually the website for The Clancy, Autograph Collection, a hotel in San
Francisco. *See* RJN, Ex. 1. The exhibit appears to have been submitted in error and is not

28  relevant to the present motion. The Court declines to take judicial notice of the screenshot of The
Clancy's website.

1    *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[I]ncorporation-by-reference is a

2    judicially created doctrine that treats certain documents as though they are part of the complaint

3    itself."). The consent decree, dismissal orders, and other court filings are subject to judicial notice

4    as matters of the public record not reasonably subject to dispute. *See* Fed. R. Evid. 201(b)(2).

5    The Court declines to take judicial notice of the list of cases where Arroyo is a plaintiff—while

6    that list is derived from public records, it is irrelevant to the resolution of the present motion.

7    **B.    Relevant Statutes**

8    **1.  The ADA**

9    Title III of the ADA prohibits discrimination by the "failure to make reasonable

10   modifications in policies, practices, or procedures, when such modifications are necessary to

11   afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

12   with disabilities," unless providing the "modifications would fundamentally alter the nature of

13   such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. §

14   12182(B)(2)(A)(ii).

15   Specifically, the ADA's "Reservations Rule" states that a public place of lodging shall

16   "modify its policies, practices, or procedures to ensure that individuals with disabilities can make

17   reservations for accessible guest rooms during the same hours and in the same manner as

18   individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i). These places of

19   lodging must, "with respect to reservations made by any means . . . identify and describe

20   accessible features in the hotels and guest rooms offered through its reservation service in enough

21   detail to reasonably permit individuals with disabilities to assess independently whether a given

22   hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1).

23   To prevail on an ADA claim, a plaintiff must show that: (1) they are disabled within the

24   meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of

25   public accommodation; and (3) the plaintiff was denied access to public accommodations by the

26   defendant because of the plaintiff's disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th

27   Cir. 2007). The first and second elements are satisfied because there is no dispute among the

28   parties that Arroyo is disabled or that the Courtyard by Marriot Newark Silicon Valley is a place

United States District Court
Northern District of California

4

1   of accommodation under this statute.  *See generally* FAC; Motion (dkt. 15).  The third element can

2   be satisfied if a plaintiff shows a violation of regulatory accessibility standards.  *See Chapman v.*

3   *Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).  Defendant does not dispute that a

4   violation of the Reservations Rule can support a claim.

5        A plaintiff may seek injunctive relief and attorney's fees under the ADA.  42 U.S.C. §§

6   12188(a)(2), 12205.

### 2.  The Unruh Civil Rights Act

8        The Unruh Act states in relevant part that "[a]ll persons within the jurisdiction of

9   [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full

10   and equal accommodations, advantages, facilities, privileges, or services in all business

11   establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  A violation of the ADA is a

12   per se violation of the Unruh Act.  *Id.* § 51(f).  Like the ADA, the Unruh Act allows plaintiffs to

13   seek injunctive relief and attorney's fees.  *Id.* § 52(c)(3).  The Unruh Act also allows plaintiffs to

14   recover "up to a maximum of three times the amount of actual damage but in no case less than

15   four thousand dollars."  *Id.* § 52(a).  A plaintiff "need not prove she suffered actual damages to

16   recover the independent statutory damages of $4,000."  *Molski*, 481 F.3d at 731 (citing *Botosan v.*

17   *Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

### C.  Motion to Dismiss

19        Defendant moves to dismiss Arroyo's complaint for failure to state a claim under Rule

20   12(b)(6) of the Federal Rules of Civil Procedure.  Motion at 1.  Defendant argues that Arroyo's

21   ADA claim fails as a matter of law, and that his Unruh Act claim fails because it is dependent on

22   the ADA claim and because the Court should decline to exercise supplemental jurisdiction over

23   the claim.[3]

### 1.  Arguments Regarding Arroyo's ADA Claim

[3]  Defendant also moves to dismiss Arroyo's ADA claim because it is barred by collateral estoppel.  Motion at 6–7.  Arroyo does not address this issue in his Opposition.  *See* Opposition. Because the Court finds that all of Arroyo's claims are subject to dismissal on the basis that they are insufficiently pled under Rule 12(b)(6), the Court does not reach Defendant's argument that Arroyo's ADA claim is also barred by collateral estoppel.  *See* Motion at 6–7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant argues primarily that its website "complies with the Reservations Rule." Motion at 7, 23. Defendant contends that its website provides more accessibility information than is required by the ADA, relying in part on 2010 Department of Justice ("DOJ") ADA guidance included as an appendix to the Code of Federal Regulations. *See id.* at 7–8 (citing 28 C.F.R. Pt. 36, App. A "Guidance on Revisions to ADA regulation on nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities" (the "2010 Guidance")). The 2010 Guidance states that for hotels built in compliance with the 1991 ADA Standards for Accessible Design[4] "it may be sufficient to specify that the hotel is accessible, and for each accessible room, to describe the general type of room . . . the size and number of beds . . . the type of accessible bathing facility . . . and communications features available in the room." 2010 Guidance.

Defendant argues that its website "provides more information about the Hotel's accessibility" than detailed in the 2010 Guidance because it confirms that they provide accessible guest rooms, outlines guest room accessibility features, and indicates accessible routes to the common areas and the accessible guestrooms. Motion at 9. While Defendant agrees that its list of accommodations is not all-inclusive, it stresses that it is not required to provide an "accessibility survey," and that in his complaint, Arroyo "cherry picks a subset of [the] ADA standards that he has determined must be repeated" on the website while arbitrarily ignoring other standards. *Id.* at 11, 20.

Defendant also argues that even if its website is only partially accessible, it still satisfies the ADA regulations—which allow for alternative means of access—because it "invites guests to contact the Hotel with any questions" and provides a telephone line. *Id.* at 3, 13–14. Defendant notes that the 2010 Guidance acknowledges that after "'reservations are made . . . many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information . . . . such as the specific layout of the room and bathroom, shower design, grab-bar

---

[4] Versions of the Standards for Accessible Design were promulgated by the DOJ in 1991 and 2010, based on the ADA Accessibility Guidelines ("ADAAG") published by the U.S. Access Board. The Standards for Accessible Design include detailed building codes, and are applicable to varying degrees based on dates of construction or renovation.

1    locations, and other amenities.' " Reply (dkt. 17) at 2 (quoting the 2010 Guidance) (alterations in

2    original).

3            Arroyo counters that the DOJ has not created any specific list of mandatory information.

4    *See* Opposition (dkt. 16) at 3.  Instead, Arroyo argues that the DOJ has stated that it "cannot

5    specify what information must be included in every instance" and that "specific information

6    concerning accessibility features is essential." *Id.* at 4 (quoting the 2010 Guidance).  Arroyo

7    contends that because the ADA is a civil rights mandate, the regulations "should be construed

8    broadly and liberally." *Id.* at 14.  Arroyo states that merely labeling a room as "accessible,"

9    cannot be said to "describe accessible features . . . in enough detail" for individuals to make

10   assessments about the room. *Id.* at 7, 9.  Arroyo also argues that a telephone line does not meet

11   ADA standards because the Reservations Rule requires "persons with disabilities have the

12   opportunity to make reservations 'in the same manner'" as other guests. *Id.* at 6.

13           Defendant points to several previous judicial decisions that it claims support its argument.

14   *See* Motion at 11–14.  For example, in *Barnes v. Marriott Hotel Services., Inc.*, the court found

15   that the defendant's reservation website's description, which included statements such as "32 inch

16   wide openings" for guestrooms and "Accessible Room Features" descriptions, was compliant with

17   the 2010 DOJ guidance and therefore was not in violation of the Reservations Rule. *Barnes v.*

18   *Marriott Hotel Services., Inc.*, No. 15-cv-01409-HRL, 2017 U.S. Dist. LEXIS 22588 at *9–10

19   (N.D. Cal. Feb. 16, 2017).  Defendant also cites a consent decree from *United States v. Hilton*

20   *Worldwide Inc.*, in which the DOJ alleged "that the Defendants' online reservations system did not

21   'accurately reflect the inventory of accessible types of rooms and amenities available'" at hotel

22   properties.  Motion at 22 (quoting Consent Decree, *United States v. Hilton Worldwide Inc.*, No.

23   10-1924, ECF Doc. No. 5 (D.D.C. Nov. 29, 2010) ("Hilton Consent Decree")).  The consent

24   decree required the defendant to ensure that its reservation system identify a list of amenities,

25   including "number of beds," "size of beds" and "roll-in shower or accessible tub."  Hilton Consent

26   Decree ¶ 25.  Defendant states that these specifications meet the DOJ's 2010 Guidance and that its

27   own website goes beyond the minimum requirements of the decree in *Hilton Worldwide*. *See*

28   Motion at 23.

*United States District Court*
*Northern District of California*

7

1   Arroyo counters that while the complaints in decisions cited by Defendant address

2   questions on the scope of the Reservations Rule, those cases were dismissed on other grounds,

3   such as failure to establish standing based on intent to return to the hotel at issue.  Opposition at

4   16–23.  For instance, Arroyo argues that *Barnes* was dismissed for lack of standing and that the

5   court conducted minimal analysis of the Reservations Rule issue because "[i]t was not a necessary

6   part of the holding or the decision."  *Id.* at 18.  Arroyo also states that the decisions cited by

7   Defendant are from district courts and are not binding precedent.  *Id.* at 16.

8   Defendant also argues that much of Arroyo's complaint is factually inaccurate and

9   arbitrary.  Motion at 19–20.  For example, Defendant states that Arroyo alleges that website "says

10  nothing" about the accessibility of the toilet, but Arroyo also quotes the website's guestroom

11  accessibility list to include "Bathroom grab bars."  Motion at 19; FAC ¶¶ 31–32, 37.  Defendant

12  also argues that its use of the term "accessible" follows the ADA's "national uniform standards for

13  accessibility" and is a "legal term of art," not just a conclusory word or opinion.  Motion at 14, 21

14  & n.3.  In its Reply, Defendant goes further to highlight that "accessible" has a specific definition

15  included in the Standards for Accessible Design and argues that this same definition should apply

16  to its use on the website.  *See* Reply at 9–10.  Even so, Defendant contends that its website goes

17  beyond the minimum labeling of "accessibility" and that its website confirms that "specific

18  elements meet [the] national uniform standards for accessibility."  *Id.* at 15.

19  Arroyo responds to Defendant's argument indirectly by outlining what he believes would

20  be sufficient information to allow individuals to reasonably make decisions.  Opposition at 14.

21  These descriptions include a "modest amount of information" about the doors, bed, toilet, sink,

22  and shower.  *Id.* at 9–13.  Arroyo contends that other nearby hotels have met this higher standard,

23  including the Hotel Fusion in San Francisco, and that these descriptions strike the correct balance

24  of information needed on a reservation site.  *Id.* at 13.  Arroyo also states that the Comfort Inn in

25  Sunnyvale goes above and beyond ADA standards on its reservation website by detailing floor

26  and hotel corridor widths, information about pool and spa accessibility, and even power outlets.

27  *Id.* at 13–14.

28

### 2.  Arguments Regarding Arroyo's Unruh Act Claim

Defendant asserts Arroyo's claim under the Unruh Act is "dependent" on Arroyo's ADA claim and therefore fails as a matter of law because the ADA claim fails to state a claim.  Motion at 24.  In the alternative, Defendant contends the Court should decline to exercise supplemental jurisdiction over Arroyo's state law claim if it dismisses the ADA claim.  *Id.* at 24-25.

## III.    ANALYSIS

### A.  Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its

United States District Court
Northern District of California

1   face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to

2   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

3   *Twombly*, 550 U.S. at 570).

### B.    Arroyo Fails to State an ADA Claim

5          As discussed above, the Reservations Rule of the ADA states that a public place of lodging

6   shall "modify its policies, practices, or procedures to ensure that individuals with disabilities can

7   make reservations for accessible guestrooms during the same hours and in the same manner as

8   individuals who do not need accessible rooms."  28 C.F.R. § 36.302(e)(1)(i).  These places of

9   lodging must, "with respect to reservations made by any means . . . identify and describe

10  accessible features in the hotels and guestrooms offered through its reservation service in enough

11  detail to reasonably permit individuals with disabilities to assess independently whether a given

12  hotel or guestroom meets his or her accessibility needs."  28 C.F.R. § 36.302(e)(1).

13         While the rule itself provides no specifics on implementation, the DOJ provides more

14  details in its Appendix A:

> [The requirement] to identify and describe the accessible features in
> the hotels and guest rooms . . . is essential to ensure that individuals
> with disabilities receive the information they need to benefit from the
> services offered by the place of lodging. As a practical matter, a public
> accommodation's designation of a guest room as "accessible" will not
> ensure necessarily that the room complies with all of the 1991
> Standards. In older facilities subject to barrier removal requirements,
> strict compliance with the 1991 Standards is not required. Instead,
> public accommodations must remove barriers to the extent that it is
> readily achievable to do so.
>
> Further, hotel rooms that are in full compliance with current standards
> may differ, and individuals with disabilities must be able to ascertain
> which features—in new and existing facilities—are included in the
> hotel's accessible guest rooms. For example, under certain
> circumstances, an accessible hotel bathroom may meet accessibility
> requirements with either a bathtub or a roll-in shower. The presence
> or absence of particular accessible features such as these may be the
> difference between a room that is usable by a particular person with a
> disability and one that is not
>
> . . .

United States District Court
Northern District of California

The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.

For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). This width may not meet current standards but may be adequate for some wheelchair users who use narrower chairs. In many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check-in or concierge services at a different, accessible location. Reservations services for these entities should include this information and provide a way for guests to contact the appropriate hotel employee for additional information. . . .

As commenters representing hotels have described, once reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench).

2010 Guidance. That appendix also states that "basic nondiscrimination principles mandate that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience of those who do not need accessible guestrooms." *Id.* This "administrative guidance on ADA compliance is entitled to deference" by courts. *Robles v.*

*Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019); *see also Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

The Ninth Circuit has not yet addressed the level of detail required by the Reservations Rule, but the overwhelming majority of recent district court decisions in this circuit have rejected claims similar to those presented here, including other cases in which a plaintiff challenged reservation websites similar to the one used by Defendant. *See, e.g.*, *Love v. Ashford San Francisco II LP*, No. 20-cv-08458-EMC, 2021 WL 1428372, at *4–5 (N.D. Cal. Apr. 15, 2021) (collecting other district court decisions dismissing such claims); *but see Garcia v. Patel & Joshi Hosp. Corp.*, No. EDCV 20-2666 JGB (PVCx), 2021 U.S. Dist. LEXIS 67028 (C.D. Cal. Mar. 19, 2021) (denying a motion to dismiss similar claims). While the question may be closer than some decisions have suggested, this Court follows the consensus view and holds the accessibility information included on Defendant's website are sufficient as a matter of law.

Arroyo has not alleged or argued that any physical aspect of the hotel at issue violates applicable ADA building standards, under either the 1991 or 2010 Standards for Accessible Design. The website includes information that the 2010 Guidance states "may be sufficient" for hotels built in compliance with those standards: it indicates that certain rooms and common spaces are "accessible," describes the "general type of room" and "the size and number of beds" ("Guest room, 2 Queen"), identifies "the type of accessible bathing facility" ("roll-in showers"), and lists "communications features available in the room" ("visual alarms and visual notification devices for door and phone," "Alarm clock telephone ringers," "TV with close-captioning," and "Flashing door knockers").[5] *See* 2010 Guidance; RJN Ex. 2; FAC ¶¶ 25, 31. The information he alleges he was unable to determine from the website, *see* FAC ¶ 37, includes features specifically regulated by the Standards for Accessible Design, like space to pull a wheelchair next to the bed and a toilet with a compliant seat height and required grab bars, as well as information that the 2010 Guidance specifically contemplates could be addressed in a post-reservation telephone call, like "shower design, grab-bar locations, and other amenities available (e.g., bathtub bench)," *see* 2010

---

[5] Arroyo's claim here is focused on mobility access; he does not allege that he required any communications features.

United States District Court
Northern District of California

1    Guidance.

2    There is some tension within the 2010 Guidance, with aspects of it suggesting that the

3    information Defendant provided is sufficient, while other portions could be read as disclaiming

4    intent to provide a clear rule—in particular, the acknowledgment that "the Department cannot

5    specify what information must be included in every instance," and the use of the word "may" to

6    introduce potentially sufficient information. *See id.* Ultimately, however, the Court agrees with

7    Defendant (and the majority of decisions to addressing this issue) that requiring more information

8    than Defendant provided here would contravene the guidance "that a reservations system is not

9    intended to be an accessibility survey." *See id.*

10    Arroyo characterizes the further information he seeks as pertaining to "core and essential

11    features" of a hotel guestroom that are "valuable information to its wheelchair-using patrons,"

12    Opposition at 14, but virtually all of the "numerous, highly technical requirements" of the

13    Standards for Accessible Design, *see id.* at 10, are necessary to at least some guests with

14    disabilities, hence why they are required. As Arroyo acknowledges, listing compliance with each

15    of those requirements would be untenable. Judge Ryu's conclusion that a guest can presume a

16    room advertised as "accessible" complies with at least the 1991 Standards for Accessible Design

17    unless otherwise specified, and that for such rooms the Reservation Rule requires additional

18    disclosure of only basic information identified in the 2010 Guidance like the number of beds and

19    type of bathing facility, strikes an appropriate balance to provide guests who have disabilities with

20    relevant information without requiring an "accessibility survey" in the reservation system. *See*

21    *Love v. Wildcats Owner LLC*, __ F. Supp. 3d __, No. 20-cv-08913-DMR, 2021 WL 1253739, at

22    *6 (N.D. Cal. Apr. 5, 2021).[6] The DOJ's conclusion that "[b]ased on that information, many

23    individuals with disabilities will be comfortable making reservations" is among the clearer

24    _____

25    [6] Again, there is tension on this point within the 2010 Guidance, which states that "a public
      accommodation's designation of a guest room as 'accessible' will not ensure necessarily that the
26    room complies with all of the 1991 Standards." *See* 2010 Guidance. The Court understands that
      portion of the guidance as addressing the status quo before adoption of the Reservations Rule, and
27    explaining the need for the Reservations Rule to require disclosures of such deviations. Of course,
      the inference that a room complies with the 1991 Standards for Accessible Design would be
28    clearer if a hotel actually stated such compliance in the reservation system, but nothing in the
      relevant regulation or guidance calls for that specific disclosure.

United States District Court
Northern District of California

13

1    portions of the 2010 Guidance and is entitled to deference.

2        The minority view of *Patel & Joshi* identifies some weaknesses in Defendant's position,

3    including ambiguous portions of the 2010 Guidance and the fact that the Hilton Consent Decree

4    predated regulatory adoption of the Reservations Rule, but it does not provide a satisfactory

5    alternative standard. *See* 2021 U.S. Dist. LEXIS 67028, at *13–14. That case describes the

6    "requested information about the accessibility of toilets or of clear floor space" as "sufficiently

7    narrow and consistent with the kinds of information that the DOJ Guidance identifies," but does

8    not explain why that particular information would be *required* under the 2010 Guidance, or what

9    differentiates it from any other information that some hotel guests with disabilities might require.

10   *See id.*

11       *Patel & Joshi* also discounted the defendant hotel's note that patrons could contact the

12   front desk with questions not resolved by the description of amenities, holding that the invitation

13   for such further inquiry "does little to support the Hotel's compliance with the Reservations Rule,"

14   *id.* at *14, but did not address the portion of the 2010 Guidance acknowledging that "many

15   individuals with disabilities may wish to contact the hotel or reservations service for more detailed

16   information . . . such as the specific layout of the room and bathroom, shower design, grab-bar

17   locations, and other amenities available," *see* 2010 Guidance. Nor is a possibility that some

18   patrons with disabilities might need to call the hotel for further information about their specific

19   needs clearly inconsistent with the regulatory requirement "to ensure that individuals with

20   disabilities can make reservations for accessible guest rooms . . . in the same manner as

21   individuals who do not need accessible rooms," 28 C.F.R. § 36.302(e)(1)(i), since some patrons

22   who do not need accessible rooms might also need to call and inquire about their own specific

23   needs—for example, whether a room has sufficient space to set up a crib for a child.

24       The question of what the Reservations Rule requires is a legal matter for the Court to

25   decide, not a question of fact for a jury. A free-ranging, case-specific inquiry into what

26   information a guest might reasonably need to make a reservation would invite the sort of

27   inconsistency and uncertainty that the DOJ presumably sought to dispel by providing some degree

28   of additional guidance as an appendix to the regulation. The Court therefore declines to enter into

United States District Court
Northern District of California

14

1   such an inquiry, as long as the reservation system identifies the facilities as accessible, has the

2   basic information identified as potentially sufficient under the 2010 Guidance, discloses any

3   deviations from the Standards for Accessible Design, and provides a mechanism for a patron to

4   obtain additional information.

5        Accepting the DOJ's determination that "many individuals with disabilities will be

6   comfortable making reservations" based on the type of information Defendant provided here, *see*

7   2010 Guidance, the Court holds as a matter of law that such disclosures, coupled with a telephone

8   number to call for inquiries about more specific needs, "[i]dentify and describe accessible features

9   in the hotels and guest rooms . . . in enough detail to reasonably permit individuals with

10  disabilities to assess independently whether a given hotel or guest room meets his or her

11  accessibility needs," *see* 28 C.F.R. § 36.302(e)(1)(ii).  Arroyo therefore has not stated a claim for

12  violation of that regulation and leave to amend would be futile.  Defendant's motion to dismiss

13  Arroyo's ADA claim is GRANTED.

14       **C.    The Court Declines Supplemental Jurisdiction as to Arroyo's Unruh Act Claim**

15       The only basis Arroyo has asserted for this Court's subject matter jurisdiction over his

16  state-law Unruh Act claim is supplemental jurisdiction under 28 U.S.C. § 1367.  *See* FAC ¶ 5.[7]

17  Under subsection (c) of that statute, however, a district court "may decline to exercise

18  supplemental jurisdiction over a claim under subsection (a) if," among other reasons, "the district

19  court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "[I]n

20  the usual case in which all federal-law claims are eliminated before trial, the balance of factors to

21  be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience,

22  fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-

23  law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  The Court therefore

24  declines to exercise supplemental jurisdiction over Arroyo's Unruh Act claim after dismissing his

25  ADA claim.[8]

26  _____

27  [7]  There is no indication, and no party has suggested, that this case falls within the Court's
    diversity jurisdiction under 28 U.S.C. § 1332.

28  [8]  If Arroyo had stated a claim sufficient to proceed under the ADA, the Court would exercise
    supplemental jurisdiction over his Unruh Act claim for the reasons stated in *Castillo-Antonio v.*

United States District Court
Northern District of California

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion is GRANTED, Arroyo's ADA claim is DISMISSED with prejudice, and Arroyo's Unruh Act claim is DISMISSED for lack of jurisdiction.  The Clerk shall enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated:  July 1, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

*Hernandez*, No. 19-cv-00672-JCS, 2019 WL 2716289, at *6–9 (N.D. Cal. June 28, 2019).